# EXHIBIT A

**RETURN DATE: DECEMBER 3, 2024**

| | | |
|---|---|---|
| EMILY TOPOLSKI | : | SUPERIOR COURT |
| | : | |
| Plaintiff, | : | |
| | : | J.D. OF HARTFORD |
| | : | AT HARTFORD |
| v. | : | |
| | : | |
| | : | |
| MOVEMENT MORTGAGE, LLC | : | |
| | : | |
| Defendant. | : | OCTOBER 18, 2024 |

## COMPLAINT

### JURISDICTION AND VENUE

1.  This action arises under the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. 46a-60, *et seq*.; the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq*.; and Connecticut state law.

2.  Plaintiff filed claims with the Connecticut Commission on Human Rights and Opportunities ("CHRO"), received a Release of Jurisdiction on August 7, 2024, and timely brings this action.

### PLAINTIFF

3.  The Plaintiff, Emily Topolski ("Plaintiff" or "Topolski"), is a natural person and resident of the city of Stratford and state of Connecticut.

### DEFENDANT

4.  The Defendant, Movement Mortgage, LLC ("Defendant" or "Movement Mortgage"), is headquartered in the State of Connecticut, registered with the State of Connecticut, is authorized to conduct business within the State of Connecticut, and conducts

-1-

substantial business within the State of Connecticut, having a principal place of business located at 75 Isham Rd, West Hartford, CT 06107.    Plaintiff worked remotely for Defendant from 90 Knollwood Drive, Stratford CT 06614.

5.    At all times relevant, James Allen ("Allen") was the Loan Officer; James Brown ("Brown") was the Processing Team Lead; Victoria Caruso ("Caruso") (non-pregnant) was the Processing Manager; Kim Churilla ("Churilla") (non-pregnant) was the Operations Manager; and Brett Santeusanio ("Santeusanio"), was the Branch Leader.

6.    Respondent employs more than twenty (20) employees.

## FACTUAL ALLEGATIONS

### A. Topolski's Exemplary Performance.

7.    On January 24, 2022, Topolski was hired by Movement Mortgage for the position of Processor II, working with a specialized loan group to work on files associated with Brett Santeusanio's team and James Allen's team.

8.    As a Processor II, Topolski processed loans closing for both Santeusanio and Allen's teams without issue and closed over 350 loans for the year of 2022 ranking her 2nd in the entire company for Movement Mortgage Processors.

9.    During Topolski's employment with Movement Mortgage, Topolski always performed the duties of her position in a satisfactory manner.

10.    Topolski never received any write-up, suspension, or disciplinary action.

### B. Topolski's Announcement of her Pregnancy and Anticipated Leave.

11.    Plaintiff became pregnant during the time of her employment with Defendant.

12. On August 31, 2022, Topolski verbally informed Caruso and Churilla of her pregnancy.

13. On September 6, 2022, Topolski notified her team, in writing, including Allen, Brown, Caruso and Churilla that she was pregnant and expecting to be out of work on leave in mid-January 2023.

### C. After Announcing her Pregnancy and Anticipated Leave of Absence, Movement Mortgage Discriminated Against Topolski by Reducing her Workloads.

14. Shortly after announcing her pregnancy, Topolski began noticing that some of her loan files were no longer being assigned to her.

15. Topolski found out that some of these loan files were being shifted to teammates-Stephen Brennan ("Brennan") (male) and Nadia Shah ("Shah") (female, non-pregnant), who were Loan Officer Assistants (LOA's) on their teams.

16. After inquiring with the Team Lead, Brown, why her files were being shifted, he notified Topolski that Brennan and Shah were being trained on files to be able to process loans for the Santeusanio and Allen Teams while Topolski was out on her expected leave of absence.

17. Topolski was told that Brennan and Shah needed a "few test case files" to get through the Movement processing training but after such, Topolski should receive all files back into her queue.

18. Sometime during this time, the Team acquired new loan officers, Don Valentas ("Valentas") (male) and he brought his own Processor Dorian Rodrigues ("Rodrigues") (female, non-pregnant). Also during this time, Eric Kincheloe

("Kincheloe") (male) Loan Officer, was hired, for whom Topolski was to be processing.

19. Topolski was still the main processor for the Team with Rodrigues as a backup. Rodrigues also needed test case files which came from Topolski's normal queue.

20. Nearly weekly, Topolski would raise concerns with her Team Lead, Brown, that she was still *not* getting all her loans, and that Brennan and Shah had retained more than just a few files needed for training.

21. Topolski was told that in early October 2022, Brennan and Shah, both finished the processing training and Topolski should start receiving all files back again in her queue for processing.

22. As weeks went on, Brennan did stop taking Topolski's loans and she was receiving the files mostly for Santeusanio's team, but still nothing, or an extreme minimum, for Allen's team.

23. Topolski was given multiple excuses (i.e., difficult client, quick closing date, etc.) as reasons purportedly why her files were still being retained by Shah.

24. Of significant importance, as noted earlier, Topolski processed all loans for the team without issue prior to her announcement of pregnancy.

25. On December 1, 2022, Topolski was told by Brown that it was "out of his hands" and Shah was receiving direction from Allen to keep Topolski's files.

26. Topolski then reached out to Sales Director, Ian Aubourg ("Aubourg"), to find out if he knew of this because Allen fell under his umbrella for sales. Aubourg said that he did not authorize Shah to be a Hybrid LOA or Processor; and that she was only to be trained to cover Topolski's leave, when it occurred.

-4-

27. Aubourg asked Topolski if she was already on leave, to which she replied "No", and Aubourg then told her that she should be getting all these files.

28. On December 2, 2022, Topolski had a conference call with Caruso and Churilla. During this conversation, Churilla acknowledged Topolski's complaints to Brown and Aubourg and wanted to find out what was going on.

29. Topolski explained the multitude of times that she had reached out asking for work, the files, and any other loans, etc., to fill the void in what used to be a busy pipeline queue. Churilla also agreed that she was told Shah was being trained solely for the purpose of covering Topolski while she was out on leave.

### D. Movement Mortgage's Acts of Discrimination Against Topolski Resulted in Stress and Loss of Income, Causing Topolski to Engage in Protected Activity, and Complain of Pregnancy Discrimination.

30. Topolski complained to Churilla and Caruso that she was, at this point, out 30 plus loan files, which equated to several thousand dollars in bonus funds, and that this drastic reduction of her workload was directly connected to Topolski's announcement of her pregnancy.

31. Furthermore, Topolski explained that she felt this was discrimination towards her due to her pregnancy.

32. Churilla claimed that she could not do anything about it and stated that the loan officers could do what they wanted, however, she also admitted that Shah should not be assigning loans to herself.

33. Churilla also assured Topolski (which turned out to be untrue), that when she returned from pregnancy leave, she would be put back on Allen and Santeusanio's files, and that this was temporary, due to Topolski's impending leave of absence.

-5-

34. Several times during this call, Topolski stressed the fact that she felt this was discriminatory, unethical, and against company policy to take files when she was not asking for a work-load reduction and was capable and able to still work. Topolski was essentially begging for her loans back.

35. During this call, Topolski also complained several times that she felt she was being discriminated against because of her pregnancy.

36. Naturally, the loss of income incurred by loan files being inexplicitly taken from Topolski caused her under duress, and the significant loss of income constitutes an adverse employment action.

37. On January 5, 2023, due to the nature of Topolski's pregnancy and the medical complications she was already experiencing, which were exacerbated by the stress of her work situation, Topolski took a week of paid time off (PTO) time prior to her leave of absence.

**E. Topolski Begins Her Leave of Absence.**

38. On January 11, 2023, Topolski gave birth and began her leave of absence (LOA).

39. By the time that Topolski's LOA came due, she had already suffered a substantial financial loss of $7,000 in bonus funds that she had lost due to files being taken from her.

**F. Topolski was on an Approved Leave Pursuant to Her Rights Under the Family and Medical Leave Act and Requested an Extension.**

40. Topolski was on an approved Family and Medical Leave Act (FMLA) leave with a return-to-work date initially on April 10, 2023, which she extended by requesting PTO that extended her return-to-work date to April 17, 2023.

-6-

41. On April 17, 2023, Topolski logged into her work computer and was excited and eager to return to work, logging in at 8:00 am.

42. Topolski pulled up the teams' loan queue and noticed there were 57 loan files between Brennan, Shah, and Rodrigues.

43. With Brennan and Shah stepping down after covering for Topolski's leave, that would be 57 loan files between Rodrigues and Topolski which is more than sufficient for two processors.

44. Given Topolski's experience in the field, she was able to handle upwards of 50 plus loans herself, thus, splitting 57 files between three employees seemed suspicious, at best.

**G. Movement Mortgage Terminates Topolski Her _First Day Back from Leave_, Under the Guise of "Layoff."**

45. At approximately 9:00 am on April 17, 2023, Human Resources (HR) contacted Topolski stating that she was purportedly being laid off due to lack of volume—her first day back at work, after engaging in a protected activity.

46. Topolski complained that it was her first day back from FMLA, and HR said that she could reach out to legal if needed.

**H. Movement Mortgage's Reported Reason for Terminating Topolski One Day After She Returned from Job-Protected Leave is a Pretext.**

47. Calling into question the veracity of Movement Mortgage's termination of Topolski, the layoff was singular—only Topolski— and appears to be in direct retaliation against Topolski for engaging in protected activity.

48. There were six (6) weeks of unpaid leave Topolski had taken and if it were a true "layoff" then HR would have notified Topolski during her LOA so that she could have had an opportunity for finding a new job during that time of unpaid leave.

49. Here, in a very short temporal proximity – only a few weeks after Topolski participated in a protected activity by FMLA leave for her pregnancy, Movement Mortgage terminated her employment.

50. Movement Mortgage interfered with Topolski's FMLA rights by failing to provide her with notice that she was entitled to said FMLA leave based on the qualifying event of which Movement Mortgage was aware.

51. Topolski clearly communicated to Movement Mortgage that she wanted to return to work after her pregnancy was over. This is documented by communications between Topolski and Movement Mortgage.

52. Topolski therefore believes and avers that Movement Mortgage discriminated against her and terminated her employment based on her gender, being pregnant, and taking FMLA leave.

## COUNT ONE

### DISABILITY DISCRIMINATION,
### IN VIOLATION OF CONN. GEN. STAT. § 46A-60(b)(1)

53. The Plaintiff hereby re-alleges and reincorporates paragraphs 1-52 with the same force and impact as if fully set forth herein.

54. The Plaintiff was pregnant at all times relevant and informed Defendant of her pregnancy.

55. The Plaintiff was at all times qualified for the position she held.

-8-

56. However, after Plaintiff informed Defendant of her pregnancy-related disability in August 2022, Defendant subjected her to disparate treatment, including but not limited to:

    a)    Reducing Plaintff's workload shortly after announcing her pregnancy, by assigning loans to other employees that would normally be assigned to Plaintiff, resulting in a loss of income; and

    b)    Suddenly terminating Plaintiff's employment on April 17, 2023, her **first day** back at work from pregnancy leave under the pretext of a "layoff."

57. Plaintiff suffered adverse employment actions, including, but not limited to, the following:

    a)    Defendant reduced Plaintff's workload shortly after announcing her pregnancy, by assigning loans to other employees that would normally be assigned to Plaintiff, resulting in a loss of income; and

    b)    Defendant terminated Plaintiff's employment on April 17, 2023, her **first day** back at work from pregnancy leave under the pretext of a "layoff."

58. Among the factors that motivated Defendant's actions was Plaintiff's pregnancy-related disability.

59. As such, Defendant's actions and conduct are a violation of Conn. Gen. Stat. § 46a-60(b)(1).

60. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety and loss of the ability to enjoy life's pleasures and activities.

-9-

61. Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

## COUNT TWO

### DISABILITY RETALIATION
### IN VIOLATION OF CONN. GEN. STAT. § 46A-60(b)(4)

62. The Plaintiff hereby re-alleges and reincorporates paragraphs 1-61 with the same force and impact as if fully set forth herein.

63. The Plaintiff participated in a protected activity by taking pregnancy leave from January 2023 until April 17, 2024

64. Defendant retaliated against Plaintiff by terminating her employment on April 17, 2023, which was her first day back from pregnancy leave, under the pretext of a "layoff."

65. Among the factors that motivated Defendant's actions was Plaintiff's pregnancy-related disability.

66. As such, Defendant's actions and conduct are a violation of Conn. Gen. Stat. § 46a-60(b)(4).

67. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety and loss of the ability to enjoy life's pleasures and activities.

68. Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

## COUNT THREE

### VIOLATION OF CONN. GEN. STAT. § 46A-60(b)(7)
### PREGNANCY DISCRIMINATION

69. The Plaintiff hereby re-alleges and reincorporates paragraphs 1-68 with the same force and impact as if fully set forth herein.

70. The Plaintiff was at all times qualified for the position she held.

71. The Plaintiff was pregnant at all times relevant and informed Defendant of her pregnancy.

72. However, after Plaintiff informed Defendant of her pregnancy in August 2022, Defendant subjected her to disparate treatment, including but not limited to:

    a)    Reducing Plaintff's workload shortly after announcing her pregnancy, by assigning loans to other employees that would normally be assigned to Plaintiff, resulting in a loss of income; and

    b)    Suddenly terminating Plaintiff's employment on April 17, 2023, her **first day** back at work from pregnancy leave under the pretext of a "layoff."

73. Plaintiff suffered adverse employment actions, including, but not limited to, the following:

    a)    Defendant reduced Plaintff's workload shortly after announcing her pregnancy, by assigning loans to other employees that would normally be assigned to Plaintiff, resulting in a loss of income; and

    b)    Defendant terminated Plaintiff's employment on April 17, 2023, her **first day** back at work from pregnancy leave under the pretext of a "layoff."

74. Among the factors that motivated Defendant's actions was Plaintiff's pregnancy.

-11-

75. As such, Defendant's actions and conduct are a violation of Conn. Gen. Stat. § 46a-60(b)(7).

76. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety and loss of the ability to enjoy life's pleasures and activities.

77. Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

## COUNT FOUR

### VIOLATION OF CONN. GEN. STAT. § 46A-60(b)(7)
### PREGNANCY RETALIATION

78. The Plaintiff hereby re-alleges and reincorporates paragraphs 1-77 with the same force and impact as if fully set forth herein.

79. The Plaintiff participated in protected activities for her pregnancy by taking time off for doctor's appointments and requesting for the reasonable accommodation of being provided a hands-free set.

80. Defendant retaliated against Plaintiff by terminating her employment on April 17, 2023, which was her first day back from pregnancy leave, under the pretext of a "layoff."

81. Among the factors that motivated Defendant's actions was Plaintiff's pregnancy.

82. As such, Defendant's actions and conduct are a violation of Conn. Gen. Stat. § 46a-60(b)(7).

83. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance,

-12-

emotional and psychological distress, stress, anxiety and loss of the ability to enjoy life's pleasures and activities.

84. Plaintiff is seeking damages as a result of Defendant's unlawful conduct.


**COUNT FIVE**

**VIOLATION OF CONN. GEN. STAT. § 46A-60(b)(1)
SEX AND GENDER DISCRIMINATION**

85. The Plaintiff hereby re-alleges and reincorporates paragraphs 1-84 with the same force and impact as if fully set forth herein.

86. After Plaintiff informed Defendant of her pregnancy in August 2022, Plaintiff was subjected to disparate treatment.

87. Plaintiff suffered adverse employment actions, including, but not limited to, the following:

    a)    Defendant reduced Plaintff's workload shortly after announcing her pregnancy, by assigning loans to other employees that would normally be assigned to Plaintiff, resulting in a loss of income; and

    b)    Defendant suddenly terminated Plaintff's employment on April 17, 2023, her **first day** back at work from pregnancy leave under the pretext of a "layoff."

88. Among the factors that motivated Defendant's actions were Plaintiff's sex and gender.

89. As such, Defendant's actions and conduct are a violation of Conn. Gen. Stat. § 46a-60(b)(1).

90. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety and loss of the ability to enjoy life's pleasures and activities.

91. Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

## COUNT SIX

### VIOLATION OF CONN. GEN. STAT. § 46A-60(b)(4)
### RETALIATION BASED ON SEX AND GENDER

92. The Plaintiff hereby re-alleges and reincorporates paragraphs 1-91 with the same force and impact as if fully set forth herein.

93. The Plaintiff participated in protected activities by taking time off for doctor's appointments and requesting for the reasonable accommodation of being provided a hands-free set due to her pregnancy.

94. Defendant retaliated against Plaintiff by suddenly terminating Plaintiff's employment on April 17, 2023, her **first day** back at work from pregnancy leave under the pretext of a "layoff."

95. Among the factors that motivated Defendant's actions were Plaintiff's sex and gender.

96. As such, Defendant's actions and conduct are a violation of Conn. Gen. Stat. § 46a-60(b)(4).

97. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance,

-14-

emotional and psychological distress, stress, anxiety and loss of the ability to enjoy life's pleasures and activities.

98.  Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

### COUNT SEVEN

### VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT OF 1993, 29 U.S.C. § 2601 *et seq.*

99.  The Plaintiff hereby re-alleges and reincorporates paragraphs 1-98 with the same force and impact as if fully set forth herein.

100. At all relevant times, Defendant was, and is, an "employer" within the definition of FMLA, 29 U.S.C. § 2611(4)(A) on the basis that it employs more than 50 employees.

101. At all relevant times, Plaintiff was an "eligible employee" within the definition of FMLA, 29 U.S.C. § 2611(2)(A), on the basis that Defendant employed Plaintiff for at least 12 months, and Plaintiff performed at least 1,250 hours of service for Defendant.

102. Defendant was aware that Plaintiff had suffered a qualifying event under the FMLA.

103. Defendant retaliated against Plaintiff for taking her lawfully permitted leave under the FMLA due to her being pregnant.

104. Defendant retaliated against Plaintiff by suddenly terminating Plaintiff's employment on April 17, 2023, her **first day** back at work from pregnancy leave under the pretext of a "layoff."

105. Defendant denied, interfered with, and restrained Plaintiff from the lawful exercise of her substantive rights provided under the FMLA, including, but not limited to,

-15-

failing to provide the required individual notices to her and thereby preventing her from making informed decisions about her leave.

106. Plaintiff was automatically prejudiced by the lack of required individualized notice. She was further prejudiced because her job was not held open for her as required by the FMLA, and she was terminated the same day she returned from FMLA leave.

107. As such, Defendant's actions and conduct are a violation of the FMLA.

108. Defendant's violation of the FMLA, 29 U.S.C. § 2615(a)(1), by interfering with Plaintiff's lawful exercise of her rights under FMLA, was willful and/or lacking good faith.

109. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety and loss of the ability to enjoy life's pleasures and activities.

110. Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

### **PRAYER FOR RELIEF**

Wherefore the Plaintiff prays that this court award:

1. Money damages;

2. Costs;

3. Punitive damages, attorney fees, and expert witness fees;

4. Pre-judgment interest

5. Trial by jury; and

6. Such other relief as the Court deems just, fair, and equitable.

-16-

THE PLAINTIFF,
EMILY TOPOLSKI

By: _____/s/_____
   Michael C. McMinn (*#423555*)
   Angela Rodriguez (*#445721*)
   **THE MCMINN EMPLOYMENT**
   **LAW FIRM, LLC**
   1000 Lafayette Blvd., Suite 1100
   Bridgeport, CT 06604
   Tel: (203) 683-6007
   Fax: (203) 680-9881
   michael@mcminnemploymentlaw.com

   COUNSEL FOR PLAINTIFF

-17-

**RETURN DATE: DECEMBER 3, 2024**

| | | |
|---|---|---|
| EMILY TOPOLSKI | : | SUPERIOR COURT |
| | : | |
| Plaintiff, | : | |
| | : | J.D. OF HARTFORD |
| | : | AT HARTFORD |
| v. | : | |
| | : | |
| | : | |
| MOVEMENT MORTGAGE, LLC | : | |
| | : | |
| Defendant. | : | OCTOBER 18, 2024 |

### STATEMENT OF AMOUNT IN DEMAND

The amount in demand is not less than fifteen thousand dollars ($15,000) exclusive of interest and costs.

THE PLAINTIFF,
EMILY TOPOLSKI

By: _____ /s/
    Michael C. McMinn (#423555)
    Angela Rodriguez (#445721)
    **THE MCMINN EMPLOYMENT
    LAW FIRM, LLC**
    1000 Lafayette Blvd., Suite 1100
    Bridgeport, CT 06604
    Tel: (203) 683-6007
    Fax: (203) 680-9881
    michael@mcminnemploymentlaw.com

    COUNSEL FOR PLAINTIFF

-18-